## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **EDWARD ACEVEDO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.: 03 C 00073** |
| **vs.** | ) | |
| | ) | **Honorable Ronald A. Guzman** |
| **P.O. DENNIS CANTERBURY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

NOW COMES Defendant, City of Chicago Police Officer, Dennis Canterbury, by and through his attorneys, Steven B. Borkan and Timothy P. Scahill of STELLATO & SCHWARTZ, LTD., and Mary Sara McDonald of Corporation Counsel's Office, hereby moves this Court, pursuant to Rule 50 of the Federal Rules of Civil Procedure, for Judgment as a Matter of Law for Defendant Canterbury and against the Plaintiff. In support of this motion, Defendant states as follows:

### FACTS

1.    On August 22, 2001, Plaintiff, acting in his capacity as a state representative, attended a political fund-raising event for another Illinois state representative at a bar in downtown Chicago.

2.    Aaron Del Valle, also a City of Chicago Police Officer at the time, as well as his office assistant Sylvia Idrovo and Denise Alcantar, Plaintiff's friend and former employee, met plaintiff at the event. Plaintiff and Mr. Del Valle drove separately to the event in their own personal vehicles.

3.      Upon arriving at the event, Ms. Idrovo parked the vehicle near the curb across the street from the bar where the event was being held.

4.      While at the event, Plaintiff admits, and was seen, consuming alcoholic beverages. Additionally while at the event Ms. Idrovo, Mr. Del Valle, and Ms. Alcantar, each consumed at least one alcoholic beverage.

5.      At approximately 12:00 a.m. on August 23, 2001, Ms. Idrovo and Ms. Alcantar left the fund-raising event and proceeded to their vehicle whereupon they become aware that their vehicle was missing.

6.      After discussing the matter with Mr. Del Valle and making various telephone calls, Plaintiff suggested to Ms. Idrovo that the car may have been towed to the auto pound located at 400 E. Lower Wacker, and Plaintiff, Mr. Del Valle, Ms. Idrovo, and Ms. Alcantar proceeded to the pound in Plaintiff's vehicle.

7.      Plaintiff drove his own vehicle, Mr. Del Valle rode in the front passenger seat, and Ms. Alcantar and Ms. Idrovo rode in the back.

8.      While inside the auto pound trailer, Ms. Idrovo was informed that she would not be able to retrieve the vehicle because it was not registered in her name.

9.      While inside the trailer, Ms. Idrovo spoke with Plaintiff on her cell phone while Plaintiff was still inside of his vehicle and Plaintiff told Ms. Idrovo to drive the car out of the auto pound lot.

10.     She left the auto pound trailer and proceeded into the pound lot and began to drive away in the vehicle and was consequently stopped by Patrick Hill, a pound employee, and returned the vehicle to the lot.

11.  Anthony Salerno, the pound supervisor present during the incident, called the police to report the disturbance.

12.  City of Chicago Police Officers Randall Robinson and Donald Parnell responded as the primary unit to a call of disturbance at 400 E. Lower Wacker.

13.  City of Chicago Police Officers Dennis Canterbury and Dale Fleming responded as an assisting unit to the call of disturbance prior to Officers Robinson and Parnell

14.  Upon arriving at the auto pound, Officer Canterbury walked into or near the auto pound trailer in order to investigate the reason the police were called and Mr. Salerno told Officer Canterbury that Ms. Idrovo attempted to leave the pound in a vehicle she was not the registered owner of and without paying for said vehicle.

15.  While Officer Canterbury was inside of or near the auto pound trailer, Officer Fleming was speaking with Mr. Del Valle outside of the pound trailer, on the ramp which provides ingress and egress to the trailer.

16.  Upon seeing Officer Canterbury exit the auto pound trailer, plaintiff exited his vehicle. while Ms. Alcantar remained inside Plaintiff's vehicle.

17.  Plaintiff walked up to Officer Canterbury, who was standing with Officer Fleming, Mr. Salerno and Mr. Del Valle on the ramp, yelling obscenities at Mr. Salerno.

18.  Officer Canterbury instructed plaintiff to go back to his vehicle, at which time Plaintiff began yelling obscenities at Officer Canterbury.

19.  At no time did Plaintiff notify Officer Canterbury that he was a police officer.

20.     While plaintiff was approaching Officer Canterbury with his arms raised towards him, Officer Canterbury could smell alcohol on Plaintiff's breath and was of the opinion that plaintiff was intoxicated.

21.     After Plaintiff raised his arms in an aggressive manner towards Officer Canterbury, Officer Canterbury took a defensive stance and pushed plaintiff in his chest area.

22.     Officer Canterbury pushed Plaintiff with enough force to get him away from Officer Canterbury's person and Plaintiff fell backwards onto his buttocks.

23.     While plaintiff was lying on his back on the ground, Officer Canterbury saw that Plaintiff had a department badge clipped to his belt side.

24.     Mr. Del Valle then informed Officer Canterbury that both he and Plaintiff were also City of Chicago Police Officers.

25.     Upon becoming aware that the altercation involved another police officer, Officer Canterbury instructed Officer Fleming to call a supervisor to come to the pound.

26.      While Officer Canterbury was waiting for the supervisor to arrive at the pound, Mr. Salerno told Officer Canterbury that Plaintiff had made threatening remarks towards him (Mr.Salerno) and that he (Mr. Salerno) had been assaulted.

27.     Based upon Plaintiff's assault against Mr. Salerno, Mr. Salerno informed Officer Canterbury that he wanted to sign a complaint against plaintiff.

28.     Approximately fifteen minutes after the altercation, Sergeant Donald Rose ("Sgt. Rose") arrived at the auto pound.

29.      Upon seeing Sgt. Rose, Plaintiff ran up to him and began yelling at him and coming into

Sgt. Rose's personal space.

30.      Sgt. Rose was forced to back away from Plaintiff as he became alarmed by plaintiff's aggression and obvious intoxication.

31.      Sgt. Rose was informed by Officer Canterbury that Officer Canterbury had pushed Plaintiff down after Plaintiff assaulted him.

32.      Sgt. Rose instructed all parties present, including Mr. Del Valle, Ms. Alcantar, and Ms. Idrovo to proceed to the First District Police Station.

33.      Plaintiff demanded an ambulance, claiming that he was injured, and Plaintiff was transported via ambulance to Northwestern Hospital where he was treated and released.

34.      Sgt. Rose went back to the First District police station where it was determined that probable cause existed that plaintiff had committed an assault.

35.      Sgt. Rose and Captain Fashingbauer (now deceased) went to Northwestern Hospital and transported Plaintiff from the hospital to the First District police station via patrol car.

36.      At no time while in the squad car did Plaintiff mention that Officer Canterbury had hit him in the face or that he wanted to press charges against Officer Canterbury for assault.

37.      After arriving at the First District police station, plaintiff was administered a Breathalyzer test by an evidence technician and registered a .062.

38.      Plaintiff was administered this test approximately six hours after the altercation with Officer Canterbury.

39.      At the time of the altercation, Plaintiff's aggression, belligerence, and loss of critical

judgment and control were all attributed to his intoxication.

41.     Plaintiff was subsequently arrested and charged with assault against Police Officer
        Dennis Canterbury.

42.     While Officer Canterbury was directed to sign a criminal complaint against Plaintiff,
        Officer Canterbury was not the arresting officer and did not, in fact, arrest Plaintiff.

## ARGUMENT

Federal Rule of Civil Procedure 50 provides that the Court may grant a motion for judgment as a matter of law where "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue…" Fed. R. Civ. P. 50. "When resolving the preliminary question of whether the entry of a directed verdict … is proper, the trial court is to decide: '[W]hether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in a light most favorable to the party against whom the motion is directed." Ford v. Childers, 855 F.2d 1271, 1274 n.4 (7th Cir. 1988).

### I. Excessive Force.

Plaintiff has failed to prove the necessary elements for his excessive force claim and, additionally, Officer Canterbury is protected by qualified immunity on this claim. Excessive force claims are governed by the Fourth Amendment reasonableness standard. Graham v. Connor, 490 U.S. 386, 393-95 (1989). This standard requires a plaintiff to establish that the officers' actions are objectively unreasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. Id. at 395. Reasonableness is judged from the officer's perspective at the time, rather than with the 20/20 vision of hindsight. Id. In other words, the Fourth Amendment test measures the objective reasonableness of the officer's action under the circumstances, which refers only to those circumstances known and information available to the officer at the time of his action. Lester v. City of Chicago, 830 F.2d 706,711(7th Cir. 1987). When a jury measures an officer's objective reasonableness it must stand in *his* shoes

and judge the reasonableness of his actions based upon the information he possessed and the judgment he exercised in responding to the situation. <u>Sherrod v. Berry</u>, 856 F.2d 802, 805 (7th Cir. l988).

With respect to the amount of force that is reasonable under the circumstances, "[t]he calculus for reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation" <u>Id.</u> at 396-97. In this regard, "[n]ot every push or shove, even if it may seem unnecessary in the peace of the judge's chambers, violates the Fourth Amendment." <u>Graham</u> at 396-97. The factors that courts rely on in determining whether a particular use of force is reasonable include: (1) the need for the use of force; (2) the relationship between the need for the use of force and the amount of force used; (3) the extent of the plaintiff's injury; (4) the efforts made by the defendant to temper or limit the amount of force; (5) the severity of the crime at issue; and (6) the threat reasonably perceived by the officer. <u>Id.</u> at 396; <u>Wilson v. Williams</u>, 83 F. 3d 870 (7th Cir. 1996); see also Federal Jury Instructions: Seventh Circuit, Civil Cases, Constitutional Torts: 42 U.S.C. § 1983, 7.09 Fourth Amendment/Fourteenth Amendment: Excessive Force-Definition of "Unreasonable," Committee Comment (b).

A police officer retains a right to use an amount of force sufficient to repel or divert an imminent battery on his person. For example, in <u>Prymer v. Ogden</u>, the Seventh Circuit affirmed that a police officer did not act with excessive force when striking plaintiff in the head with an "open-hand stun" technique in order to forcefully divert plaintiff's head from the officer in response to the officer's apprehension that the plaintiff was imminently going to spit on the officer. <u>Id.</u>, 29 F. 3d 1208, 1215-16 (7th Cir. 1994). The Seventh Circuit found that these actions were not objectively unreasonable and that the officer was justified in taking these actions in order to avoid being spat upon. <u>Id.</u>

While excessive force claims do not require an individual to sustain injury, the fact that an individual has not sustained an injury gives weight to the assertion that excessive force does not exist. See <u>Meyer v. Robinson</u>, 992 F.2d 734 (7th Cir.1993);<u>Threlkeld v. White Castle Systems, Inc.</u>, 201 F. Supp.2d 834 (N.D. Ill. 2002); <u>Lanigan v. Village of East Hazel Crest</u>, 913 F. Supp. 1202 (N.D. Ill. 1996)(plaintiff allegedly poked and pushed by officers in violent manner

was insufficient for finding of excessive force when no injury sustained by plaintiff).

In the present case, the amount of force used by Officer Canterbury was eminently reasonable and clearly not excessive under the facts and circumstances facing Officer Canterbury. Indeed, the actions of Officer Canterbury are essentially a more persuasive permutation of the facts of Prymer set forth above. Officer Canterbury responded to a call in the early morning hours in response to an unspecified disturbance at the auto pound. After being advised that several individuals had attempted to illegally remove a vehicle from the auto pound without paying for said vehicle and after being advised that these individuals had verbally assaulted the auto pound workers, Officer Canterbury was personally presented with a belligerent, intoxicated individual (plaintiff) who continued to verbally assault an auto pound worker with a profanity-laced tirade in his (Officer Canterbury's) immediate presence. Officer Canterbury instructed plaintiff to cease this activity and return to his vehicle. However, plaintiff not only disobeyed this directive, but turned his hostilities directly to Officer Canterbury. Plaintiff advanced on Officer Canterbury in an aggressive manner while shouting obscenities and began to raise his hand toward Officer Canterbury's face. Rather than permit plaintiff to strike him, Officer Canterbury reverted to a defensive stance and pushed plaintiff in the chest area. This caused plaintiff to stumble backward several feet and land on his buttocks. Plaintiff picked himself up shortly thereafter and sustained no tangible injuries from this use of force.

Officer Canterbury obviously had the right not to be struck by plaintiff and took only those actions which he reasonably believed were necessary to repel plaintiff and prevent this perceived imminent battery. Thus, it is clear that this amount of force was an objectively reasonable use of force and, accordingly cannot satisfy the constitutional requirements of this claim.

**II. False Arrest.**

Plaintiff claims that Officer Canterbury falsely arrested him on August 23, 2001. This claim requires plaintiff to prove the following by a preponderance of the evidence: (1) defendant arrested plaintiff; (2) defendant did not have probable cause to arrest plaintiff; and (3) defendant was acting under color of law. See Federal Jury Instructions: Seventh Circuit, Civil Cases, Constitutional Torts: 42 U.S.C. § 1983, 7.05 Fourth Amendment: False Arrest-Elements.

The existence of probable cause to arrest presents an absolute bar to a section 1983 claim

based on the Fourth Amendment. See <u>Jones v. Webb</u>, 45 F.3d 178, 181 (7th Cir. 1995); <u>Fernandez v. Perez</u>, 937 F.2d 368 (7ᵗʰ Cir. 1991); <u>Rodgers v. Lincoln Towing</u>, 771 F.2d 194 (7th Cir. 1985). It is well established that probable cause exists "when the facts and circumstances within the police officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that an offense has been committed." <u>Edwards v. Cabrera</u>, 58 F.3d 290, 291 (7th Cir. 1995); <u>Sheik-Abdi v. McClellan</u>, 37 F.3d 1240 (7th Cir. 1994), cert. denied 115 S.Ct. 937 (1995)*; Maxwell v. City of Indianapolis*, 998 F.2d 431 (7th Cir. 1993); <u>Hughes v. Meyer</u>, 880 F.2d 967, 969 (7th Cir. 1989), cert denied 495 U.S. 931.

"An officer's belief in the existence of probable cause '*need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false.*" <u>Driebel v. City of Milwaukee</u>, 298 F.3d 622 (7th Cir.2002)(emphasis in original). Accordingly, " 'as long as a reasonably credible witness or victim informs the police that someone has committed, or is committing, a crime, the officers have probable cause to place the alleged culprit under arrest, and their actions will be cloaked with qualified immunity if the arrestee is later found innocent.'" <u>Spiegel v. Cortese</u>, 196 F.3d 717, 723 (7th Cir.1999).

"In evaluating whether probable cause was reasonably determined, the trier of fact "must consider the facts as they would have reasonably appeared to the arresting officer 'seeing what he saw, hearing what he heard' at the time of the incident." <u>Driebel</u>, 298 F.3d at 643 (quoting <u>Richardson v. Bonds</u>, 860 F.2d 1427, 1431 (7th Cir.1988)); <u>Spiegel</u>, 196 F.3d at 723 ("The existence of probable cause turns on the information known to the officers at the moment the arrest is made, not on subsequently-received information"). In other words, courts evaluate probable cause "not on the facts as an omniscient observer would perceive them, but on the facts as they would appear to a reasonable person in the position of the arresting officer seeing what he saw, hearing what he heard." <u>Sheik-Abdi</u>, 37 F.2d at 1246. Thus, in reviewing a probable cause determination, the trier of fact should consider whether the arresting officer " 'acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed several years after the fact.' " <u>Spiegel</u> at 723.

Further, the determination of probable cause does not focus on the relevant officer's state of mind nor does it focus on the specific offense which the arresting officer arrested plaintiff.

Devenpeck v. Alford, 543 U.S. 146, 153-54 (2004). To the contrary, so long as there is probable cause to sustain *any* offense against the plaintiff, plaintiff is unable to establish the "without probable cause" element of his prima facie case. Taylor v. Bush, 2006 WL 862855, *3-4 (N.D. Ill. 2005). In other words, the relevant probable cause need not be for the offense offered at the time of the arrest or even closely related to this. Devenpeck at 148-53; Taylor at *4. So long as an objective review of the collective knowledge of the agency supports "arguable" probable cause for any offense whatsoever, plaintiff may not succeed on a false arrest claim.

In multiple officer cases where the officer first responding to a scene is not the arresting officer, the relevant inquiry is whether the "collective knowledge" of all of the involved officers is sufficient to support "arguable" probable cause. See U.S. v. Parra, 402 F. 3d 752, 764 (7th Cir. 2005). In other words, the knowledge of multiple officers involved in a single arrest may be imputed to each other even when there is no direct testimony of the transmission of such information between officers. Id.

In the present case, plaintiff will be unable to establish the first and second elements of his *prima facie* case. First, it is undisputed that Officer Canterbury was not the arresting officer and did not, in fact, cause plaintiff to be arrested at any time. Accordingly, plaintiff's claim is deficient on this ground alone for failure to satisfy the first element of his *prima facie* case.

Second, the arrest of plaintiff was supported by ample evidence to establish probable cause on both the offense charged and several other offenses not charged *even when the conduct toward Officer Canterbury is completely disregarded*. Specifically, the arrest of plaintiff for the assault of Officer Canterbury was supported not only by the statement of Officer Canterbury himself, but by the interviews and statements of pound worker, Anthony Salerno, and Police Officer Dale Fleming. The facts and circumstances known prior to plaintiff's arrest would also have supported an arrest on suspicion of driving under the influence (see 625 ILCS 5/11-501), disorderly conduct for plaintiff's verbal assault on Mr. Salerno which was provided to the police prior to the arrest (see 720 Ill. Comp. Stat. 5/26-1), breach of police rules and regulations (specifically, being intoxicated off-duty and using profanity toward members of the public and fellow officers)(see Chicago Municipal Code §§ 2-84–230, 2-84-290) (stating the police officers may be arrested for violating police rules and regulations); see also Williams v. Jaglowski, 269 F. 3d 778, 782-83 (7th Cir. 2001)(sustaining finding of probable cause relating to arrest of off-

duty police officer for obstructing a police officer even when probable cause for this offense was not existent; probable cause could have existed for non-compliance with departmental rules). Thus, even completely disregarding the complaint of Officer Canterbury regarding plaintiff's actions toward him, there was ample "arguable probable cause" to support numerous other offenses. Accordingly, per mandate of the United States Supreme Court, plaintiff is unable to meet his burden of his false arrest claim.

Additionally, as a related matter, these same finding mandate a finding the Officer Canterbury is entitled to qualified immunity. Again, a finding of "arguable" probable cause immunizes an individual officer from suit. Per mandate of the United States Supreme Court, this inquiry is not only focused on the actual offense charged but all other offenses for which the arrestee could have been charged. See <u>Devenpeck</u> at 148-53. In the present case, plaintiff introduced evidence in his case in chief that he drove his own car, that he had been drinking, and that he directed profanities at police officers. This admitted conduct alone is enough to direct a verdict for Officer Canterbury. However, when evaluated with the testimony of Officer Fleming and other on the scene, it is clear that "arguable" probable cause existed to arrest plaintiff for several offenses *even if the allegations of Officer Canterbury are completely diregarded.*

WHEREFORE, for the above stated reason, defendant, DENNIS CANTERBURY, prays this Court grant him judgment as a matter of law pursuant to Fed. R. Civ. P. 50.

Respectfully submitted,

STELLATO & SCHWARTZ, LTD.

By:    s/ Steven B. Borkan
        Steven B. Borkan

Steven B. Borkan
STELLATO & SCHWARTZ, LTD.
120 North LaSalle Street
Suite 3400
Chicago, Illinois 60602
(312) 419-1011